## IN THE COURT OF APPEALS OF IOWA

No. 18-0698
Filed June 20, 2018

**IN THE INTEREST OF Z.C.,**
**Minor Child,**

**G.C., Father,**
       Appellant,

**H.S., Mother,**
       Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their child.  **AFFIRMED ON BOTH APPEALS.**

J. David Zimmerman, Clinton, for appellant father.

Jennifer M. Triner Olsen of Olsen Law Office, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Brian P. Donnelly of Mayer, Lonergan & Rolfes, Clinton, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Bower, JJ.  Tabor, J., takes no part.

**VOGEL, Presiding Judge.**

The mother and father separately appeal the district court's termination of their parental rights to their child, Z.C. Both parents contend the State failed to prove by clear and convincing evidence the grounds to terminate their parental rights under Iowa Code section 232.116(1)(d), (g), (h), and (i) (2018). The mother also asserts termination is not in the child's best interests and that she has a strong bond with Z.C, which should preclude termination. The father asserts he should have been given additional time to work towards reunification. Because the district court properly terminated both parents' rights under paragraph (h), the parents have unresolved substance-abuse and mental-health issues resulting in Z.C. being unable to be placed in either parent's care, termination is in Z.C.'s best interests, and no factors preclude termination, we affirm.

## I. Background Facts and Proceedings

The family came to the attention of the Iowa Department of Human Services (DHS) in May 2017 after Z.C. was born prematurely and tested positive for THC.[1] Z.C. remained in the hospital until July 10 due to complications from his premature birth, including eating "spells" where he would lose oxygen during feedings. Upon Z.C.'s discharge, he was removed from the parents' care and placed with a biological sibling in a foster home where he remained during these proceedings.

---

[1] This is the mother's fifth involvement with the DHS and her parental rights to four other children were previously terminated. The record is unclear as to whether the father is also the father to all of the mother's other children but the child-in-need-of-assistance file indicates the father's parental rights to a child born April 2015 were terminated in January 2016. *See In re M.C.*, No. 16-0182, 2016 WL 1359130 (Iowa Ct. App. Apr. 6, 2016).

On July 25, Z.C. was adjudicated CINA under Iowa Code section 232.2(6)(b), (c)(1), (c)(2), (g), (*l*), (n), and (o) (2017).

Following Z.C.'s removal, the DHS offered services to both parents. The mother and father were required to obtain mental-health and substance-abuse evaluations. They then sporadically attended treatment for their mental-health and substance-abuse issues. Further, the parents participated in some parenting services until the end of November when they stopped attending and ceased visitation with Z.C. After neither parent exhibited sustained progress toward reunification, January 18, 2018, the State petitioned to have both parents' parental rights to Z.C. terminated. The matter was heard on March 15, 2018, after which the mother's and father's parental rights were terminated under Iowa Code section 232.116(1)(d), (g), (h), and (i) (2018).

The mother and father separately appeal.

## II.    Standard of Review

We review termination proceedings de novo, giving weight to but not being bound by the district court's fact findings. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). There must be clear and convincing evidence of the statutory grounds for termination. *Id.*

## III.    Statutory Grounds

As noted, the district court terminated the mother's and father's parental rights pursuant to Iowa Code section 232.116(1)(d), (g), (h), and (i). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). The mother and father both tacitly appeal the termination of their

parental rights.  The mother failed to appeal any statutory grounds.  The father states no finding of the district court with which he disagrees under Iowa Code § 232.116(1), nor any factor under 232.116(2) or (3) that would preclude termination.  *See* Iowa R. App. P. 6.1401-Form 5.  Because they provide no supportive facts, argument, or analysis, we may consider the arguments waived.  *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all-encompassing argument is insufficient to identify error in cases of de novo review."); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments.").  Nevertheless, we briefly discuss the grounds proven under paragraph (h).

Under section 232.116(1)(h), the court may terminate parental rights if it finds the State has proved by clear and convincing evidence the child (1) is three years of age or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing.

It is undisputed that Z.C. was three years of age or younger, was adjudicated CINA, and had been removed from the physical custody of both parents for the last six consecutive months.  *See* Iowa Code § 232.116(1)(h)(1)-(3).  The remaining question is whether there was clear and convincing evidence Z.C. could not be returned to the mother's or the father's custody at the time of the termination hearing.  *Id.* § 232.116(1)(h)(4); *see In re A.M.*, 843 N.W.2d 100, 111

(Iowa 2014) (indicating the statutory language "at the present time" refers to the termination hearing).

At the time of the termination hearing, the mother and father had only just begun to reengage in visitation with Z.C. They had not engaged in visitation since November 2017, either failing to return phone calls from the DHS or not showing up to scheduled visitation. The mother testified she would continue to use marijuana to self-medicate for her mental-health issues, even if Z.C. was returned to her care because it is the only "medication" she claimed would help her. The following exchange occurred during the termination hearing:

> Q. And you have never engaged in a substance abuse treatment program, have you, anywhere? A. No. . . . Because I don't feel I have a drug problem.
> Q. And you—the reports also indicate your statement now that you don't have a drug problem and that you're not going to stop using illegal substances; right? A. It's not illegal. It's decriminalized. But why would I stop smoking when that's the only thing that keeps me calm?
> Q. The question was: You're not gonna stop; right? A. No, I'm not. And I don't smoke around my children, if that was a concern.

Due to the mother's unwillingness to attend to her substance-abuse and mental-health issues and her testimony that she will continue to use marijuana, the State proved by clear and convincing evidence that Z.C. could not be returned to the mother at the time of the termination hearing.

Like the mother's substance-abuse issues, the father testified he has had issues with alcohol and anger. The father was required to undergo an evaluation and complete services, but he failed to do so. Instead, the father claims he was able to stop drinking alcohol and attend to his mental-health issues without the help of a professional. He testified that he "just stopped [drinking alcohol], because

it's not a problem," and he did not attend anger-management classes "[b]ecause somebody else, even whether a shrink or not, they can't help you. You have to be able to help yourself." The father's unwillingness to attend to his substance-abuse and mental-health issues is clear and convincing evidence that Z.C. could not be returned to his custody at the time of the termination hearing.

We therefore find clear and convincing evidence to support the termination of the mother's and father's parental rights to Z.C. under section 232.116(1)(h).

## IV.    Best Interests

Both the mother and the father contend termination of their parental rights is not in Z.C.'s best interests, citing Iowa Code section 232.116(2) and (3). Both also assert they share a bond with Z.C.

In considering a child's best interests, we give consideration "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). According to the DHS, Z.C. is thriving in his foster placement where he receives attention to meet his medical and everyday needs. Given the mother's and father's apparent unwillingness to attend to the issues that led the DHS involvement, termination of their parental rights is in Z.C.'s best interests because his long-term nurturing and growth and his physical and emotional needs are being met outside of their care.

The record also reflects that no impediment to termination found in Iowa Code section 232.116(3) precludes termination. Z.C. was removed from the parents' care shortly after he was born and has been out of their care for nearly

his entire life, refuting the conclusion that Z.C. shares a strong parent-child bond with either the mother or the father. *See* Iowa Code § 232.116(3)(c). Accordingly, we affirm the district court's order terminating both the mother's and father's parental rights to Z.C.

The father also requests additional time to work toward reunification. *See id.* § 232.104(2)(b) (providing a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). At the termination hearing, the father did not provide anything of substance that would support a finding that the need for removal would not exist if an extension of time were granted. He simply testified reunification depended on when he could obtain treatment, but he could not specify when treatment would begin or how much time he would need to complete it. Additionally, because the father does not believe he needs treatment to attend to his mental-health and substance-abuse issues, though treatment is clearly indicated as necessary, the record does not show the father would be able to safely care for Z.C. even with a six-month extension of time.

## V.    Conclusion

Because the district court properly terminated both parents' rights under paragraph (h), their unresolved substance-abuse and mental-health issues result in Z.C. being unable to be placed in their care, termination is in Z.C.'s best interests, and no factors preclude termination, we affirm.

**AFFIRMED ON BOTH APPEALS.**